UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AVA NEWMAN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-81 |
| | § | |
| KROGER TEXAS, LP, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion for summary judgment filed by defendant Kroger Texas, LP ("Kroger"). Dkt. 11. After considering the motion, response, reply, record evidence, and applicable law, the court is of the opinion that the motion should be GRANTED.

**I. BACKGROUND**

This is an employment discrimination case. Plaintiff Ava Newman began working for Kroger in 1998 as an assistant pharmacy manager. Dkt. 11, Ex. A at 32. She was promoted to pharmacy manager in September 1999, and she worked as a pharmacy manager until her employment was terminated on August 28, 2015. *Id.* at 86; Dkt. 11, Ex. B. Kroger contends that Newman's employment was terminated for fraud and falsification of prescriptions and violations of company policy. Dkt. 11 & Ex. B. Specifically, Newman verified and released five prescriptions when no patient was present.[1] Dkt. 11. Newman, on the other hand, contends that there is prima facie evidence that her employment was terminated because of her race—African American.

---

[1] Kroger also contends that Newman violated other policies and that there were other performance problems, but the court finds it unnecessary to delve into these other issues. *See* Dkt. 11 & Exs.

Dkt. 14. She argues that she was a member of a protected class, subject to an adverse employment decision, and qualified for her position, and that she was replaced by a person who she contends is outside of her class, a Hispanic female. *Id.* She also asserts that she was subject to harassment and discriminatory actions by the Hispanic female who replaced her as well as two Hispanic females who were her supervisors at different times. *Id.* In reply, Kroger argues that it had a legitimate non-discriminatory reason for terminating Newman's employment and that Newman has provided no evidence that this reason is pretext. Dkt. 15.

## I. LEGAL STANDARD

### A. Summary Judgment

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

### B. Title VII and § 1981

Newman asserts that Kroger discriminated against her in violation of 42 U.S.C. § 2000e(2)(a) (Title VII) and 42 U.S.C. § 1981. Dkt. 1. Courts in the Fifth Circuit "evaluate claims of race discrimination under § 1981 using the same analysis as those under Title VII." *Bright v. GB*

*Bioscience Inc.*, 305 F. App'x 197, 201 n.3 (5th Cir. 2008) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S. Ct. 2363 (1989), *superceded by statute on other grounds as stated in CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 449, 128 S. Ct. 1951 (2008)). Plaintiffs may prove discrimination using either direct or circumstantial evidence. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). "Direct evidence is evidence which, if believed, proves the fact without inference or presumption." *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). Race discrimination claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* framework. *Turner*, 476 F.3d at 345; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817 (1973). Under this framework, a plaintiff claiming her employment was terminated in violation of Title VII must present a prima facie case that she "(1) is a member of a protected class; (2) was qualified for her position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999). A plaintiff may also satisfy the fourth prong by showing that similarly situated individuals were treated more favorably. *See Okoye v. Univ. of Tex. Hous. Health Science Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001); *Davin v. Delta Air lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982) (defining the fourth prong as follows: "after her discharge, [the defendant] either hired a man to replace her or retained a man who had engaged in conduct similar to that for which [the plaintiff] was terminated").

If the plaintiff successfully establishes a prima facie case, the burden or production shifts to the employer to "rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for adverse employment action." *Turner*, 776 F.3d at 345. If the employer meets its burden, then the plaintiff must "present substantial evidence that the employer's reason was pretext for discrimination." *Id.* "If the plaintiff can show that the proffered explanation is merely

pretextual, that showing, when coupled with the prima facie case, will usually be sufficient to survive summary judgment." *Id.* However, a "Title VII plaintiff at all times bears the 'ultimate burden of persuasion.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 113 S. Ct. 2742 (1993).

### III. ANALYSIS

Newman argues that summary judgment should be denied because it is undisputed that she is a member of a protected class, suffered an adverse employment action when her employment was terminated, was qualified to be the pharmacy manager, and was replaced by somebody outside her protected class. Dkt. 14. Her summary judgment evidence consists solely of a declaration by Newman in which she asserts, among other things, that she made complaints to the store manager about harassment and discriminatory actions of three Hispanic women, including two pharmacy coordinators who were Newman's supervisors at different times and the assistant pharmacy manager who replaced Newman when Newman's employment was terminated; that she became the center of an investigation in 2015 for allegedly committing fraud, falsifying prescriptions, and violating company policy; and that the allegations of fraud and theft were made by the assistant pharmacy manager who had been harassing her. *Id.* & Ex. A.

Kroger argues that (1) Newman cannot make out a prima facie case because there is no evidence of a similarly situated employee of a different race who was treated differently; (2) regardless, it had a legitimated non-discriminatory reason for terminating Newman's employment; and (3) Newman has no evidence of pretext. Dkts. 11, 15. The court need not consider the first argument because even if Newman has sufficient evidence to support her prima facie case, Kroger provides evidence of a legitimate nondiscriminatory reason for Newman's termination, and Newman provides no evidence of pretext.

4

Specifically, Kroger provides Newman's deposition testimony, an affidavit from a Veterinarian, and an affidavit from Angie Balla, the district pharmacy coordinator for Kroger. Dkt. 11, Exs A, B, J. Prior to Newman's termination, Balla investigated a report that a customer had come in to pick up a prescription that appeared to have been picked up a few days before, but there was no receipt or signature, which is required by Kroger policy. Dkt. 11, Ex. B (Balla Aff.). The system showed that the prescription had been verified and released by Newman within one minute even though this process usually takes longer. *Id.* Balla contacted the district's Loss Prevention Manager (the "LPM"), and Balla and the LPM reviewed video footage for the time period in which the prescription was showing verified and released. *Id.* There was no patient present when the medication was keyed into the computer system as complete. *Id.* During this investigation, Balla noticed that there were other prescriptions that had been verified and released by Newman within one minute, and she and the LPM consequently reviewed video footage for these time periods as well. *Id.* Again, there was no patient present. *Id.* Kroger next contacted the prescribing physician on the prescriptions that were dispensed within a minute with no customer present, and the physician was not aware of anybody calling in the prescription and was not even familiar with the medications prescribed. *Id.* Ballas and the LPM met with Newman regarding these findings, and Newman was unable to provide an explanation. *Id.* The Human Resources Department reviewed the results of the investigation and recommended termination. *Id.*

Newman contends in her declaration that she advised the LPM "that the only reason a prescription would be verified and release[d] without a patient present in the pharmacy or without an electronic signature would be for a home delivery or [because a] patient provided a manual signature in the drive through." Dkt. 14, Ex. A. She states that for home delivery, once the verification process is complete and the medication has been released, the pharmacy employee

delivers the prescription to the customer, and the customer signs a signature tab that is stored with all the other manual signatures. *Id.* However, she does not directly state that the prescriptions at issue were home deliveries, and she provides no evidence of the manual signatures. Moreover, Newman admitted during her deposition that she told the LPM that she had not done a home delivery in several months. Dkt. 11, Ex. A at 195. She testified that she was "horrified" during that interview and that she "actually delivered prescriptions more frequently," but she "was afraid to tell him" that "because the work environment [she] had been experiencing at the time." *Id.* at 195–96.

The medications that were verified and released without a patient present were Albenza and Jublia 10 percent. *Id.* at 182–84; Dkt. 11, Ex. B. Newman testified that the Jublia 10 percent was a topical drug used for fungus and that Albenza is used for parasites. Dkt. 11, Ex. A at 183. Kroger provides an affidavit from a veterinarian who has published works relating to bird or avian health, and she asserts that Albenzadole has pharmacological use on pigeons and other birds as it can treat parasites, and Efinaconazole, while not documented for use on birds, could be expected to have anti-fungal properties in pigeons and other birds. Dkt. 11, Ex. J. Kroger also provides evidence that during the time of the events at issue, Newman was the managing member and president of a business called A-Champ RX Complete Pigeon, LLC. Dkt. 11, Ex. A at 35–36. This business sells nutritional supplements for pigeons. *Id.* at 254. Newman owns about twelve pigeons. *Id.* at 41.

In her response to Kroger's motion for summary judgment, Newman points out that manual signatures for home deliveries and prescriptions that are picked up in the drive through are stored in the pharmacy department for up to three years and older signatures are stored off site. Dkt. 14. She conclusorily contends that she adhered to the policy of requiring either electronic or manual signatures to release all medications. *Id.* However, Newman does not make this assertion in her declaration, and the response points to no deposition testimony supporting this statement. *See id.*

6

& Ex. A. Thus, there is no evidence to support the contention. Additionally, she does not provide any evidence of manual signatures for these medications, which could have been obtained during discovery. Moreover, Newman does not even argue in her response that Kroger's purported reason for her termination is pretext. *See* Dkt. 14 (arguing only that Newman "has shown that there is evidence to support an essential element of Ava Newman's claim" and discussing pretext only in the "standard of review" section).

Kroger has produced sufficient summary judgment evidence that it had a legitimate non-discriminatory reason for terminating Newman's employment. The results of its fraud investigation implicated Newman. When Newman was interviewed about the prescriptions that were released without a patient present, she told her supervisor and the LPM that she had no recollection of the transactions. Dkt. 11, Ex. B. She agreed during her deposition that she told the LPM that she would only release a prescription without a customer present if she were doing a home delivery, and she did not deny that she told him the last time she had a home delivery was several months prior to the events at issue.[2] Dkt. 11, Ex. A at 194–95. While Newman now contends that it also could have been a customer in the drive through signing manually or that she did home deliveries all the time and just did not want to tell the LPM, the information Kroger had at the time of termination was that Newman had not done a home delivery in months, home delivery was the only way there would be no signature on file, and somehow these prescriptions, which the physician did not even recall writing or know what the drugs were used for, had been dispensed by Newman without a customer

---

[2] At first Newman stated that she was "not sure" and that she "may have said that" when asked if she told Loss Prevention that the last home delivery was several months ago. Then, she agreed that she would not have been dishonest with Loss Prevention but that she was "just terribly upset at the time." She agreed that she was "pretty sure" that her answer was several months ago. Dkt. 11, Ex. A at 195.

present. Moreover, the drugs dispensed appear to be drugs that can be used to treat pigeons, and Newman had a side business selling pigeon supplements and owned approximately twelve pigeons. These investigation results are a legitimate nondiscriminatory reason for termination of employment.

Newman does not argue that this reason is pretext in her response and she did not present any evidence that could be construed as indicating that Kroger's reason was pretext. Her implication that the prescriptions at issue could have been drive-through or home-delivery prescriptions is insufficient for a reasonable juror to conclude that the termination of Newman's employment was based on Newman's race. Newman centers her case around the fact that her supervisor and the woman who replaced her are both Hispanic females and her conclusory assertions that her "workplace slowly became hostile" and "unbearable" due to the "discriminatory behavior" of these women. *See* Dkt. 14, Ex. A. Without evidence to support the alleged "discriminatory behavior" and in light of Kroger's evidence of a legitimate nondiscriminatory reason for Newman's termination, these allegations and the mere fact the women are of a different race than Newman does not raise an issue of material fact that Kroger terminated Newman's employment because of her race.

## IV. Conclusion

Kroger's motion for summary judgment is GRANTED. Newman's claims against Kroger are DISMISSED WITH PREJUDICE. The court will enter a final judgment concurrently with the order.

Signed at Houston, Texas on July 3, 2019.

_____
Gray H. Miller
Senior United States District Judge